UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X
                                              :

MICHAEL CARUSO,                            :

                              :           06 Civ. 5997 (PAE)

                  Plaintiff,        :

            -v-                :        OPINION & ORDER

                              :

THE CITY OF NEW YORK et al.,        :

                              :

                  Defendants.     :

                              :
---------------------------------------------------------------------X

**PAUL A. ENGELMAYER, District Judge:**

      Plaintiff Michael Caruso, a former Inspector General at the New York City Department of Investigation (DOI), brings a variety of federal and state claims, relating to his allegation that he was terminated in retaliation for his grand jury testimony regarding Bernard Kerik, the former Commissioner of the New York City Police Department.  Defendants move pursuant to Federal Rule of Civil Procedure 12(c) for judgment on the pleadings and dismissal of the Complaint.  They argue that Caruso's grand jury testimony, which has recently been unsealed and is cognizable on this motion, belies and thus renders implausible the central factual allegation in Caruso's Complaint.[1]  For the following reasons, Defendants' motion is denied.

---

[1]  Caruso's Complaint is in six counts.  The first two allege violations of 42 U.S.C. § 1983 premised on the First Amendment to the federal Constitution; the third and fourth allege parallel violations of Caruso's right to free speech under the New York Constitution; and the fifth and sixth assert claims for wrongful discharge and defamation under New York law.  The parties agree that this motion applies equally to all six counts.

I. **Background**[2]

In March 2006, Plaintiff Caruso was a longtime Inspector General at DOI, responsible for overseeing investigations of alleged improprieties at, among other places, the New York City Department of Corrections ("DOC"). In late 2005 and 2006, the Bronx County District Attorney's Office and the DOI were jointly investigating Kerik's activities while Commissioner of DOC between January 1998 and August 2001. One allegation under investigation was that Kerik had corruptly intervened in a 1999 investigation by a city agency of Interstate Industrial Corporation ("Interstate"), which at the time employed Kerik's brother and a friend of Kerik's named Larry Ray. A grand jury was empanelled to investigate and hear testimony about that subject, among others.

During the 2005–2006 investigation, Defendant Walter Arsenault, then a First Deputy Commissioner at DOI, was cross-deputized as a Bronx Assistant District Attorney (ADA). In that role, he participated in examining grand jury witnesses. In March 2006, Caruso was called to testify before the grand jury. A main subject of that testimony was to be a July 1999 meeting that Caruso had attended with Kerik and Ray Casey ("Casey"), then Commissioner of the city agency (the Trade Waste Commission) that was investigating Interstate. That meeting was held at Walker's, a downtown restaurant.

As alleged in the Complaint, Arsenault believed, and was seeking to establish before the grand jury, that at the meeting at Walker's, Kerik had vouched to Casey for his friend Larry Ray, then an Interstate employee, as a person who could provide truthful information and assist Casey

_____

[2] The Court's account of the underlying facts of this case is drawn from Caruso's Complaint, Caruso's grand jury testimony, and undisputed background facts. *See* Declaration of Amy Weinblatt in Support of Defendants' Motion for Judgment on the Pleadings ("Weinblatt Decl."), Dkt. 66. Because this is a motion pursuant to Rule 12(c), all inferences are drawn in favor of Plaintiff. Except where specifically referenced, no further citation to these sources will be made.

in learning about Interstate.  Arsenault theorized that, by so vouching for Larry Ray, whom he knew if contacted would exonerate Interstate, Kerik had been seeking to improperly influence, and perhaps derail, the investigation.  The Complaint alleges that, the day before his grand jury testimony, Arsenault instructed Caruso that, while testifying, he should "remember Kerik vouched for Larry Ray at the Walker's meeting and everything will be ok."  Cmplt. ¶ 21, Dkt. 1.

On March 21, 2006, Caruso testified before the grand jury.  Arsenault was present and, along with a Bronx ADA, participated in questioning Caruso.  Three days later, Caruso was informed that DOI was terminating his employment.  Caruso had served for more than 26 years as a New York City employee.

On August 7, 2006, Caruso filed this Complaint.  All six counts are based on Caruso's allegation that he was terminated in retaliation for his grand jury testimony.  Specifically, Caruso alleges that he was terminated for refusing to testify falsely to the grand jury, in that he could not truthfully comply with Arsenault's order to testify that "Kerik vouched for Larry Ray," and therefore did not do so, and, presumably because this undermined DOI's theory of the case, DOI terminated him in retaliation.[3]

As a result of federal and state criminal proceedings relating to Kerik and others, Caruso's grand jury testimony was long under seal and unavailable to counsel in this case.  As a result, discovery in this case was long stayed.  However, with those proceedings concluded, on April 20, 2011, Caruso's grand jury testimony was unsealed by Order of the New York Supreme Court, Bronx County, and thereupon produced in discovery.

---

[3] The Defendants factually dispute this claim.  They contend that Caruso was terminated for independent reasons.  At oral argument, counsel for the defense represented (in response to questions from the Court) that discovery has substantiated that, before Caruso testified in the grand jury, DOI had determined to terminate him.  On a motion for judgment on the pleadings, however, such evidence is not cognizable and is not considered here by the Court.

[3]

On October 28, 2011, Defendants moved for judgment on the pleadings, based on the grand jury transcript.  They argue that the minutes of Caruso's grand jury testimony are properly considered on such a motion, because the Complaint references that testimony, and they argue that these minutes reveal that Caruso in fact *did* testify that Kerik vouched for Larry Ray.  Thus, Defendants argue, Caruso's Complaint, based on the factual claim that Caruso did not comply with Arsenault's alleged directive to so testify, rests on a conclusively demonstrated falsehood and thus fails the plausibility standard for pleadings of *Ashcroft v. Iqbal*, 129 S. Ct. 1949 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  In opposition, Caruso argues that the grand jury minutes do not quote him to state, literally, that Kerik "vouched for Larry Ray"; that the concept of vouching is subjective; and that the minutes are ambiguous enough on this point to create an issue of fact incapable of resolution at this stage.[4]  The Court held oral argument on the motion on January 6, 2012.

## II.    Discussion

### A.    Applicable Legal Standards

A motion for judgment on the pleadings under Rule 12(c) is governed by the same standard as a motion to dismiss under Rule 12(b)(6).  *Ades & Berg Group Investors v. Breeden (In re Ades & Berg Group Investors)*, 550 F.3d 240, 243 n.4 (2d Cir. 2008) (citing *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999)); *see also United States Life Ins. Co. v. Blum*, No. 09-cv-9416, 2011 U.S. Dist. LEXIS 1531, at *10 (S.D.N.Y. Jan. 3, 2011).  Under that standard, the

---

[4] At oral argument, Plaintiff's counsel sought alternatively to defend the Complaint by asserting a different theory, to wit, that Arsenault was also dissatisfied with a different portion of Caruso's grand jury testimony, relating to certain organized crime activity.  As the Court advised counsel at oral argument, that theory is not appropriately considered, because the Complaint nowhere articulates it.  Nor may Plaintiff amend his Complaint to add it:  Under the Court's Individual Rules and Practices in Civil Cases, Plaintiff had the opportunity to amend his complaint in response to Defendants' motion for judgment on the pleadings, but forewent that opportunity when he elected instead to litigate the adequacy of the Complaint as pled.

court must accept a plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor.  *Gonzalez v. Caballero*, 572 F. Supp. 2d 463, 466 (S.D.N.Y. 2008); *see also Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010) ("We review the district court's grant of a Rule 12(b)(6) motion to dismiss *de novo*, accepting all factual claims in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor.").

To survive a motion for judgment on the pleadings, the complaint must contain factual allegations amounting to "more than an unadorned, the-defendant-unlawfully-harmed me accusation," *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), such that those allegations, when accepted as true, "state a claim for relief that is *plausible on its face*."  *South Cherry Street LLC v. Hennessee Group LLC*, 573 F.3d 98, 110 (2d Cir. 2009) (emphasis in original).  Although extrinsic materials generally may not be considered on a motion for judgment on the pleadings, materials incorporated in the complaint by reference may be considered.  *See, e.g.*, *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007); *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 71 (2d Cir. 1998), *cert. denied*, 525 U.S. 1103 (1999).  The parties agree that the minutes of Caruso's recently unsealed grand jury testimony are properly considered on this motion.

**B.  Discussion**

Defendants base their argument for dismissal on a single factual proposition: that Caruso – consistent with Arsenault's alleged pre-testimony directive to him – did testify before the grand jury that Kerik "vouched" for Larry Ray.  It follows, Defendants argue, that the theory of the Complaint, that Caruso was retaliated against for failing to so testify, is implausible.

On review of the transcript of Caruso's grand jury testimony, there is much to commend this argument.  Although Caruso does not literally use the word "vouch," several portions of his testimony clearly convey that at the meeting at Walker's restaurant, Kerik made statements that

[5]

tended to bolster Larry Ray's credibility and reliability.  Defendants point to a number of such passages in the transcript.

For example, when Caruso was first asked about the meeting at Walker's, he testified as follows:

> **Q:**  Okay.  Please explain to us what happened at [the meeting at Walker's].
>
> **A:**  During the meeting, Bernard Kerik basically told Ray Casey that Larry Ray was employed [at Interstate] which Ray [Casey] was already aware of, that Kerik's brother was there, Donald Kerik, which Casey was aware of, and he offered them – if Ray Casey needed assistance in the ongoing probe that he was conducting, that – Kerik said, you know, Larry Ray would be made available to him or his brother would be made available to him, him meaning Ray Casey.
>
> Casey asked him how he knew Larry Ray.  Kerik said he knew him for some time and that Larry Ray in the past had been a federal informant I believe he said for the FBI.
>
> He then invited Ray Casey to check, if he wanted to check or confirm, he said speak to his FBI handlers which would be the people assigned to Larry Ray when he was an informant.  I believe he said that he was an informant for the FBI.
>
> **Q:**  At any time during the meeting, did Ray Casey ask Bernard Kerik whether or not he, meaning Ray Casey, and the Trade Waste Commission could trust Larry Ray?
>
> **A:**  I don't remember the exact words, but I believe that was – it was a question similar to that and prompted Kerik to say that he knew him for a number of years and he should check with his prior FBI handlers when he was an informant.

Tr. 33:23–35:1, Ex. A to Weinblatt Decl., Dkt. 66.  As this passage reveals, Caruso did not shrink from testifying that Kerik had (1) volunteered that he had a relationship of with Larry Ray of long standing; (2) identified Larry Ray as a person who could productively assist Casey in the pending investigation; and (3) mentioned that Larry Ray had been a federal informant in the past, perhaps for the FBI.  Caruso's final response in this passage is also reasonably read to imply that, Larry Ray's "FBI handlers," if consulted, would report to Ray Casey that Larry Ray was, indeed, trustworthy.

[6]

Later in the testimony, Caruso again related Kerik's offer to Ray Casey of Larry Ray's services in connection with the pending investigation of Interstate:

> **Q:** What else was discussed at the [Walker's] [M]eeting?
>
> **A:** There was conversation  [at the Walker's Meeting] where Kerik had told Ray Casey if he needed any assistance regarding surveillance devices, reviewing any records, that he would make Larry Ray available to him to assist him with that.

Tr. 35:7–35:11, Ex. A to Weinblatt Decl., Dkt. 66.

> **Q:** Continue.  What else do you recall about the meeting?
>
> **A:** Just Kerik on a couple of occasions offering Larry Ray, Larry Ray's assistance, whether or not Ray Casey wanted to speak to him to give him the background of the company, what he sees at the company on a daily basis, discussion along those lines.

Tr. 36:23–37:5; Ex. A. to Weinblatt Decl., Dkt. 66.

These passages would supply, at a minimum, a substantial basis for the Defendants to argue that Caruso – without literally using the word "vouch" – had complied with Arsenault's alleged directive to testify that Kerik had "vouched" for Larry Ray.  Caruso's testimony that Kerik had offered a way for Ray Casey to "confirm" what Kerik had said about Larry Ray, *i.e.*, speaking with Larry Ray's FBI handlers (Tr. 34:14) is particularly indicative.  Caruso thereby conveyed that Kerik had equated his assessment of Larry Ray with the assessment of Larry Ray that he believed the "FBI handlers" would supply, to wit, that the Trade Waste Commission "could trust Larry Ray."  Caruso's testimony that Kerik "on a couple occasions" had "offer[ed] . . . Larry Ray's assistance" and suggested that Ray Casey might want to speak with Larry Ray about Interstate's background and "what he sees at the company on daily basis" also supports Defendants' argument.  Read in context, such statements by Kerik logically presuppose that Larry Ray's word on this subject would be good, and Caruso reported these, too, to the grand jury.

However, that is not the end of the analysis. The central premise of Caruso's Complaint is that DOI – personified by Defendant Arsenault, as the DOI official who had instructed Caruso to testify that Kerik had "vouched" for Larry Ray and who was personally present at the grand jury to hear Caruso's testimony – was dissatisfied with Caruso' testimony as to whether Kerik had vouched for Larry Ray.[5] The critical issue here is therefore whether *Arsenault* believed that Caruso had testified sufficiently on the vouching point to meet his, Arsenault's, expectations. And just because a reasonable outside observer might conclude from a review of a transcript that Caruso had conveyed that Kerik had vouched for Larry Ray, that does not mean that Arsenault, present in person for the testimony and having his own expectations for that testimony, reached the same conclusion. In other words, what matters is Arsenault's subjective assessment whether Caruso had testified satisfactorily to meet his directive as to Kerik's vouching.[6]

On review of Caruso's testimony, it is possible to identify areas in which it is plausible to conclude that Caruso's testimony may have fallen short of Arsenault's expectations as to the vouching point. Directly after the passage, cited by Defendants, in which Caruso testified that Kerik had said Larry Ray was an FBI informant, Arsenault followed up with this question:

---

[5] No other DOI official besides Arsenault was present during Caruso's grand jury testimony. And there is no basis, in the Complaint or otherwise, to assume that the transcript of Caruso's grand jury testimony was available to DOI three days later, when Caruso was, allegedly, informed of his termination. Thus, any dissatisfaction within DOI as to Caruso's testimony on the subject of Kerik's "vouching" necessarily derived from Arsenault's perception and account of that testimony. *See* Cmplt. ¶ 28, Dkt. 1 (alleging that "[f]ollowing [Caruso's] testimony, Defendant Arsenault informed Defendant [Rose] Gill Hearn [the Commissioner of DOI] of Plaintiff's Grand Jury testimony.")

[6] The Court notes that "vouching" is by definition a term that does not inherently have bright-line contours. If Arsenault's pre-grand-jury instruction to Caruso had been to testify "that the light was red," a transcript that revealed that Caruso had so testified would render an allegation implausible that Caruso had not done so. Because vouching is a more subjective, judgmental concept, Defendants carry a heavier burden in arguing that the transcript requires dismissal of the Complaint as implausible.

[8]

> **Q:** What did you understand Kerik to be saying when he said I knew Larry Ray for a number of years with regard to his trustworthiness?

Tr. 35:2–35:4, Ex. A. to Weinblatt Decl., Dkt. 66.  That question, unlike the previous ones, asked Caruso not to relate statements made by Kerik at the meeting, but instead to relate his subjective understanding of what Kerik had been attempting to communicate.  It is plausible that Arsenault followed up with this question because he believed that Caruso's prior answers had fallen short of the mark by merely relating Kerik's serial statements at the meeting, rather than synthesizing these statements into a broader conclusion to the effect that Kerik was vouching for Larry Ray.

In any event, the transcript reflects that Caruso responded with a brief, single-sentence answer:

> **A:** It's not like they just met.

Tr. 35:5, Ex. A. to Weinblatt Decl., Dkt. 66.  After this exchange, Arsenault did not follow up with any additional questions on the issue of Kerik's statements on the subject of Larry Ray's trustworthiness.

It is, of course, entirely plausible to read Caruso's succinct answer as literally responsive, and as presenting no cause for dissatisfaction on Arsenault's part.  But it is also plausible to read it as a willful and aggravating refusal by Caruso to give Arsenault the answer that Arsenault had earlier directed Caruso to give, to wit, a declarative statement that Kerik was vouching for Larry Ray.  Indeed, plausibly, Arsenault was dissatisfied that Caruso never managed to work the word "vouched" into his grand jury testimony, despite Arsenault's earlier instruction to do so, and despite the ready opportunity that (via the above question) Arsenault had offered Caruso while in

[9]

the grand jury to do so.  In other words, it is plausible that, from Arsenault's perspective, he had

lobbed Caruso the proverbial softball question, and that Caruso had let it sail by untouched.[7]

In sum, although the grand jury transcript supplies substantial support for an argument

that Defendants may have occasion to make later in the case that Caruso had in fact testified that

Kerik had vouched for Larry Ray, the transcript is simply not conclusive enough on that point to

justify dismissal at this stage.  With all inferences required to be drawn in favor of the

Complaint, the Court concludes that the Complaint plausibly alleges that Caruso was terminated

for failing to satisfactorily comply with Arsenault's instruction to testify that Kerik had vouched

for Larry Ray at the meeting at Walker's.[8]

---

[7] The Court is also mindful that a transcript of Caruso's testimony may be insufficient to capture the full effect of his testimony upon Arsenault in the grand jury.  Caruso's tone, body language, eye contact, or other non-verbal cues, for example, may have contributed to an impression left with Arsenault that Caruso's testimony on the vouching point had fallen short.  Separately, the Court notes that, at the time he filed his Complaint (August 2006), Caruso did not have access to the grand jury transcript, and therefore was legitimately inhibited from making more particularized allegations about specific questions and answers in the grand jury.  The Complaint therefore instead speaks only in broad terms about the content of that testimony, alleging that Caruso testified truthfully about the vouching point and that he could not truthfully testify as Arsenault had instructed him to.  *See* Cmplt. ¶¶ 21–25, Dkt. 1.

[8] Whether Caruso's testimony on the subject of Kerik's "vouching" was sufficient to satisfy Arsenault's (and DOI's) expectations is an ultimate issue of fact in this case; such questions are generally not appropriately resolved by the Court on a motion for judgment on the pleadings. *See Porrazzo v. Bumble Bee Foods, LLC*, No. 10-cv-4367, 2011 U.S. Dist. LEXIS 112297, at *29 (S.D.N.Y. Sept. 30, 2011) ("Whether a danger is in fact common knowledge among the public is ordinarily a question of fact that cannot be resolved at the motion to dismiss stage."); *see also Life Prod. Clearing LLC v. Angel*, 530 F. Supp. 2d 646, 652 (S.D.N.Y. 2008) ("Cases that hinge on an issue relating to state of mind should generally not be disposed of summarily.") (citing *Yiamouyiannis v. Consumers Union of U.S., Inc.*, 619 F.2d 932, 939 (2d Cir. 1980) (proof calling into question a party's state of mind "does not readily lend itself to summary disposition")); *Niroomand v. Erie County Med. Ctr.*, No. 97-cv-0021E(H), 1996 U.S. Dist. LEXIS 8200, at *16 (W.D.N.Y. June 4, 1996) ("Allegations of falsity, malice and intent have been properly pled and any determination of the existence vel non of such factors is not appropriate on a motion to dismiss."); *Rockland County Sheriff's Deputies Ass'n v. Grant*, 670 F. Supp. 566, 568 (S.D.N.Y. 1987) (claims that "typically turn on issues of fact concerning good faith or intent . . . [are] usually unsuited for summary judgment")).

**CONCLUSION**

For the foregoing reasons, Defendants' motion for judgment in the pleadings is denied. The Clerk of Court is directed to terminate the motion at docket number 64.

The parties are directed to meet and confer forthwith regarding outstanding discovery in this case, and to submit by January 25, 2012 a proposed Civil Case Management Plan and Scheduling Order, available at the Court's website at http://nysd.uscourts.gov/judge/Engelmayer, governing any remaining discovery, and the post-discovery schedule, in this case.


SO ORDERED.

Paul A. Engelmayer
United States District Judge


Dated: January 18, 2012
         New York, New York